**MESLAT, Appellant,**

**v.**

**OHIO LIQUOR CONTROL COMMISSION, Appellee.**

[Cite as *Meslat v. Ohio Liquor Control Comm.*, 164 Ohio App.3d 13, 2005-Ohio-5491.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 05AP–318.

Decided Oct. 18, 2005.

</div>

---

1. The lot rentals consisted of lot rent of $140 and Florida lot rental of $351.

Jim Petro, Attorney General, and Stephen Derank Jr., for appellee.

Lanese M. Meslat, for appellant.

McGrath, Judge.

{¶ 1} Appellant, Mohammad D. Meslat, appeals from the judgment of the Franklin County Court of Common Pleas affirming the order of the Ohio Liquor Control Commission, denying an application by appellant for new C–1 and C–2 liquor permits. The permits are sought in order for appellant to open a convenience store that would sell alcohol and sundries.

{¶ 2} Appellant's application, being opposed by Cleveland City Council, was originally granted by the Superintendent of the Division of Liquor Control. In granting the application the superintendent found that "the Cleveland City Council was unable to present sufficient evidence to show that the applicant is unfit to engage in the retail sale of alcoholic beverages or that issuance of this permit would adversely impact the peace, sobriety and good order of the

community." The city appealed to the commission and requested a de novo hearing. The city received a hearing on April 6, 2004, which included testimony from Roosevelt Coats, Detective Ollie Pillow, Janet Dean, Alan Smith, and Mohammad Meslat. The commission issued an order reversing the superintendent's grant of the application. Appellant appealed the commission's order to the Franklin County Court of Common Pleas pursuant to R.C. Chapter 119. After reviewing the evidence, the trial court found that the commission's order was supported by reliable, probative, and substantial evidence, and affirmed the order of the commission. This appeal followed.

{¶ 3} On appeal, appellant raises the following two assignments of error.

[1.] The trial court erred in affirming the Commission's Order as its decision was not supported by reliable, probative and substantial evidence.

[2.] The trial court erred in affirming the Commission's Order as its decision was not in accordance with law.

{¶ 4} In an administrative appeal pursuant to R.C. 119.12, the trial court reviews an order to determine whether it is supported by reliable, probative, and substantial evidence and is in accordance with the law. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 482 N.E.2d 1248. In applying this standard, the court must "give due deference to the administrative resolution of evidentiary conflicts." *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 407 N.E.2d 1265.

{¶ 5} Reliable, probative, and substantial evidence has been defined as follows: (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value. (Footnotes omitted.) *Our Place, Inc. v. Ohio Liquor Control Comm.* (1992), 63 Ohio St.3d 570, 571, 589 N.E.2d 1303.

{¶ 6} On appeal to this court, the standard of review is more limited. Unlike the court of common pleas, a court of appeals does not determine the weight of the evidence. *Bd. of Edn. of Rossford Exempted Village School Dist. v. State Bd. of Edn.* (1992), 63 Ohio St.3d 705, 707, 590 N.E.2d 1240. In reviewing the court of common pleas' determination that the commission's order was supported by reliable, probative, and substantial evidence, this court's role is limited to determining whether the court of common pleas abused its discretion. *Roy v. Ohio State Med. Bd.* (1992), 80 Ohio App.3d 675, 680, 610 N.E.2d 562. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.

*Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. However, on the question whether the commission's order was in accordance with the law, this court's review is plenary. *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 343, 587 N.E.2d 835.

{¶ 7} In the case before us, the commission did not issue findings of fact and conclusions of law or give any reasons for its reversal of the superintendent's order. The commission's order merely states, "After consideration of the evidence and arguments of counsel, the commission finds said appeal is well taken and *reverses* the order of the Superintendent of the Division of Liquor Control." (Emphasis sic.) Therefore, we are left to assume that the basis for the commission's order is one or a combination of the grounds for appeal filed by the city in its notice of appeal, which are as follows:

[1.] The proposed permit premises are located in a residential neighborhood. The City avers that the permit premises is so located with respect to the neighborhood that substantial interference with the public decency, sobriety, peace or good order of the neighborhood would result from the issuance of the permit, in accordance with ORC 4303.292(A)(2)(c).

[2.] The number of permits that already exist in the neighborhood is such that the issuance of a permit would be detrimental to, and substantially interfere with, the morals, safety, and welfare of the public, in accordance with ORC 4303.292(B)(2).

[3.] That the place for which the permit is sought is so situated with respect to any school, church, library, public playground, or hospital that the operation of the liquor establishment will substantially and adversely affect or interfere with the normal, orderly conduct of the affairs of those facilities or institutions, in accordance with ORC 4303.292(B)(1).

{¶ 8} If any one of the above grounds is supported by reliable, probative, and substantial evidence, the commission's order must be upheld. This court has revisited the issue of what evidence is reliable, probative, or substantial when a new permit is sought. See *Bagley Interstate 71 Ent., Inc. v. Ohio Liquor Control Comm.*, Franklin App. No. 03AP–720, 2004-Ohio-1063, 2004 WL 422842.

{¶ 9} In *Bagley,* the appellant sought a new liquor permit in order to sell beer and wine at its Brecksville Shell Station, but the commission denied the application. The trial court reversed the commission's order, finding that the only evidence presented consisted of " 'unsubstantiated concerns of [the city's] witnesses that the issuance of a liquor license would impact either the school or the neighborhood adversely.' " Id. at ¶ 4. The trial court, relying on our decision in *Serv. Station Holdings, Inc. v. Liquor Control Comm.* (June 27, 1996), Franklin

App. No. 96APE01–22, 1996 WL 362054 (*"Service Station I"*), determined that those opposing the permits presented only general, speculative evidence that was insufficient to establish that granting the permits would substantially interfere with public decency, sobriety, peace, or good order. Id.

{¶ 10} In finding that the trial court abused its discretion in reversing the commission, this court stated:

Although [*Service Station I*] cited by the trial court, and other cases have held that unsubstantiated fears or speculation regarding the impact a liquor license would have upon the surrounding community are not sufficient evidence that the issuance of the permit would interfere with public interests, this court also has recognized that evidence presented in opposition to applications for new permits, is, by definition, more speculative than evidence in cases of permit renewal or transfer applications.

*Bagley*, supra, 2004-Ohio-1063, 2004 WL 422842, at ¶ 10.

{¶ 11} And while we recognized that the trial court relied on our decision in *Service Station I*, we were able to distinguish the facts in *Bagley*, since the nearest church, school, and daycare center in *Service Station I* were all approximately one mile away from the station. In contrast, the facts in *Bagley* were more similar to those set forth in *Serv. Station Holdings, Inc. v. Liquor Control Comm.* (Feb. 20, 1997), Franklin App. No. 96APE08–1053, 1997 WL 72008 (*"Service Station II"*). In *Service Station II,* the evidence showed that a high school was located on another corner of the gas station's already busy intersection, and that the increased traffic generated by the availability of alcohol at the station would create a hazard to the students.

{¶ 12} In upholding the decision of the common pleas court affirming the commission's decision to deny the permit, this court found, in *Service Station II:*

This testimony is not general, speculative evidence applicable as an argument against most permit applications. It is specific testimony of the current situation, past accidents at that location, and the significant interference with the public order that has already occurred and is reasonably likely to be exacerbated by the granting of the requested permit.

Id., at *24.

{¶ 13} In finding that the facts of *Bagley* were more similar to those of *Service Station II,* this court focused on the testimony of the city's mayor, who testified that the station's property was contiguous with a church, which was contiguous to a school, and that every day many of the fourth- and fifth-grade students attending the school walked past the station. In addition, the testimony indicated that the station had become a congregating place for young people, and, therefore, there were concerns about the impact on and temptations of the students

and the hazard created by potential inebriated drivers. There was also testimony regarding underage tobacco sales and arrests outside the station for underage possession of alcohol and drugs. An employee of the station had been arrested, albeit during his off hours, for selling cocaine behind the station, and there was an illegally installed bingo machine at the station. The principal of the elementary school testified that many students walked from the school to a nearby recreation center and that the increased traffic posed a danger not only during school hours but for after-school events, as well as to visitors of the school. The president of the PTA testified that students who walked to school and waited for their rides tended to congregate at the station and that the sale of alcohol at the station raised safety concerns.

{¶ 14} We focused in *Bagley* on the specific testimony of the current situation, past accidents at that location, and the significant interference with the public order that had already occurred and was reasonably likely to be exacerbated by the granting of the requested permit. However, unlike the evidence in *Bagley*, the evidence in this case consists of general and speculative concerns of persons opposed to the sought permits. The evidence consists mainly of testimony given at the April 6, 2004 hearing before the commission.

{¶ 15} The testimony established that appellant seeks a liquor permit for a unit in a plaza that contains four suites. A music store and a hair salon currently operate there. Appellant seeks the liquor permit for the third unit, to be operated as a convenience store, and intends to operate a restaurant in the fourth unit.

{¶ 16} Roosevelt Coats, city councilman for the city of Cleveland, testified that a school involved with a church, a daycare, and a new school currently under construction all in the vicinity of appellant's premises, and that the church, the school, and the residents were opposed to a permit at the requested location, as they had expressed their concerns to him. He testified that there were many problems with loitering at the premises when a business there held a liquor permit five years ago, but that since the business closed, there have not been any problems.

{¶ 17} Detective Ollie Pillow, from the Cleveland Police Department, testified that there were habitual complaints and a number of arrests that were made in front of the premises approximately five years ago when a business was operating there with a liquor permit and under different ownership. He testified that a lot of loitering took place at that location, and since the store had been closed, the activity has moved further south to a residential area. He further testified that the loitering is caused not by the presence of the permit necessarily but by the mere fact of a business being operated at that location. However, on redirect,

Pillow testified that loitering and criminal activity tend to occur around permit premises.

{¶ 18} Janet Dean, a resident of the area who lives approximately four blocks from the premises and a committee member of Lakeshore/Euclid Beach Improvement Association, testified to the problems that occurred five years ago when there was a permit there. Dean testified that there was a lot of loitering, and that because she was a member of the police auxiliary, she had called the police to that location numerous times. Dean further testified that they are trying to improve the whole area and that "this certainly doesn't make it any better." Dean testified that while she was concerned about the effects of a liquor permit at the sought location, there was a 7–Eleven store with a liquor permit, close to the plaza at issue here, that has no problems with loitering because the "store owner there is very good, he's responsible." Dean went on to testify that she has no knowledge or reason to believe that appellant would not be responsible in running a grocery store with a liquor permit.

{¶ 19} Adam Smith, program manager of the Euclid–St. Clair Development Corporation, opposed the issuance of a liquor permit at this location because in trying to bring new homes to the area, he believes "it would take away from the neighborhood and take away from potential new residents who have an option of going somewhere else." However, he admitted on cross-examination that he has no scientific facts, expertise, or background to demonstrate how the issuing of a liquor permit at the grocery store that is a carryout would affect traffic or loitering.

{¶ 20} While those opposed to the permit expressed concerns regarding the school, daycare, and church, there is no evidence as to how the school, daycare, or church might be affected by the issuance of the sought liquor permit. In fact, it is noteworthy that there was no testimony from any representative of the school, daycare, or church opposing the issuance of the permit.

{¶ 21} R.C. 4303.292(A)(2)(c) provides that the commission may refuse to issue a liquor permit if it finds that the place for which the permit is sought is "so located with respect to the neighborhood that substantial interference with public decency, sobriety, peace, or good order would result from the issuance * * * of the permit and operation under it by the applicant." That provision does not require a showing that the applicant disregarded any laws and recognizes that there are environmental factors that may dictate that a liquor permit not be issued. However, we find that the city failed to present reliable, probative, and substantial evidence regarding the environmental factors. All the testimony related to problems that occurred at that location five years ago when the premises were operated under different ownership; and while the problems that existed then have moved to another area of town, there are no problems at the

location now, despite the fact that two businesses are currently being operated in the plaza. Further, the testimony revealed that another business in the area, the 7–Eleven, is operating with a liquor permit but does not have the loitering problems, with the success being attributed to the 7–Eleven's current ownership. Detective Pillow's testimony established that any business located on a corner had the potential to become a place for loitering and that while loitering may be aided by a liquor permit, it was not caused by the presence of a liquor permit.

{¶ 22} R.C. 4303.292(B)(2) gives the commission the authority to deny a permit when "the number of permits already existent in the neighborhood is such that the issuance or transfer of location of a permit would be detrimental to and substantially interfere with the morals, safety, or welfare of the public." However, even though there was testimony about the total number of permits in the area, approximately 21 in a one-mile radius, with 11 of those being C–1 and C–2 permits like the ones sought by appellant, there was no evidence regarding how appellant's permits would be detrimental to the morals, safety, or welfare of the public. Thus, the bare fact of the number of permits in a given area, without any indication as to whether this number is excessive and/or why the addition of another permit would be detrimental and substantially interfere with the morals, safety, or welfare of the public, does not constitute substantial or probative evidence.

{¶ 23} R.C. 4303.292(B)(1) provides that the commission can deny the issuance of a liquor permit if it finds that "the place for which the permit is sought is so situated with respect to any school, church, library, public playground, or hospital that the operation of the liquor establishment will substantially and adversely affect or interfere with the normal, orderly conduct of the affairs of those facilities or institutions." Again, there was no evidence regarding how the church, school, or daycare would be substantially and adversely affected. In fact, there was no evidence regarding how these facilities would be affected at all, and as stated previously, we also find it noteworthy that there was no opposing testimony from any representative from these facilities.

{¶ 24} Upon reviewing the evidence before the commission, we find that the commission was not justified in denying the application. Like those opposing the permits in *Service Station I*, those opposing the permits here presented only generalized and speculative concerns. The testimony did not have a direct bearing on the issue of the proposed permit location or the possible interference with the nearby school, church, or daycare. While a certain amount of speculation is inherent when considering the application for a new permit, the evidence in this case consists solely of speculation based on events that occurred five years ago when there were liquor-permit premises at this location that were being operated by another individual, not the applicant.

{¶ 25} Thus, we find that the trial court abused its discretion in finding that there was reliable, probative, and substantial evidence supporting the commission's order denying the issuance of the sought permits pursuant to R.C. 4303.292(A)(2)(c), 4303.292(B)(2), and 4303.292(B)(1). Accordingly, we sustain appellant's two assignments of error.

{¶ 26} For the foregoing reasons, appellant's two assignments of error are sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this matter is remanded to that court for further proceedings in accordance with law and consistent with this opinion.

Judgment reversed
and cause remanded.

FRENCH and TRAVIS, JJ., concur.