OPINION
{¶ 1} 2216 SA, Inc., appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which the court affirmed two orders of the Ohio Liquor Control Commission ("commission"), appellee. The commission affirmed the orders of the Superintendent of the Division of Liquor Control ("division") rejecting appellant's 2003-2004 and 2004-2005 renewal application of their D-1, D-3, and D-3A liquor permits and their application for new class D-2 and D-6 liquor permits.
 {¶ 2} Appellant is the liquor permit holder for an establishment located in Columbus, Ohio. The establishment is located in a commercial area that is surrounded by *Page 2 
a residential area and presents adult entertainment. Appellant holds class D-1, D-3, and D-3A liquor permits. A D-1 liquor permit authorizes appellant to sell beer for on-premises consumption, and the D-3 and D-3A liquor permits authorize appellant to sell spirituous liquor until 2:30 a.m. A D-2 liquor permit authorizes the sale of wine and mixed alcoholic beverages for on-premises consumption. A D-6 permit authorizes the sale and consumption of intoxicating liquor on Sunday.
 {¶ 3} Appellant sought renewal of its 2003-2004 and 2004-2005 liquor permits and new class D-2 and D-6 permits. The city of Columbus objected to the renewal of appellant's permits and objected to the issuance of new permits, based upon complaints by local residents regarding noise, loud music, fights, gunshots, litter, prostitution, public urination, and public intoxication in an around the permit premises. Columbus police had also conducted investigations in 2002, resulting in the arrest and conviction of several of appellant's employees.
 {¶ 4} On May 5 and June 15, 2005, the division held hearings on the matter. On December 6, 2005, the division issued two orders denying the renewal of the permits and denying the issuance of the new permits. The division denied the renewal of the permits based upon the following grounds, identified as (1), (2), and (3) in the order: (1) there was a substantial interference with public decency, sobriety, peace, or good order, pursuant to R.C. 4303.292(A)(2)(c); (2) the applicant disregarded the laws, regulations, or local ordinances of the state, pursuant to R.C. 4303.292(A)(1)(b); and (3) Maria Fitzcharles ("Fitzcharles"), who took over as the bar's manager after Susie Samples was fired in December 2002, had been convicted of a crime that related to the fitness to operate a liquor permit business, pursuant to R.C. 4303.292(A)(1)(a). The division denied the new *Page 3 
D-2 and D-6 permits based upon the same three grounds listed above, as well as the following three additional grounds, identified as (4), (5), and (6) in the order: (4) local option elections laws prohibited a D-6 permit; (5) the applicant was prohibiting the division from consideration of the next application for a D-2 permit in the taxing district as provided by the priority for the statutory quota; and (6) the application failed to provide an additional permit fee for the D-2 permit, which is required to process the D-2 permit application.
 {¶ 5} Appellant appealed the division's orders to the commission. After a November 14, 2006 hearing, the commission affirmed the orders of the division in two November 22, 2006 orders. Appellant appealed the commission's orders, and, on June 29, 2007, the Franklin County Court of Common Pleas issued a judgment affirming the commission's orders. Appellant appeals the judgment of the court, asserting the following assignment of error:
 THE COMMON PLEAS COURT ABUSED ITS DISCRETION IN AFFIRMING THE ORDERS OF THE LIQUOR CONTROL COMMISSION, IN THAT THE ORDERS ARE NOT SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE AND ARE NOT IN ACCORDANNCE WITH LAW.
 {¶ 6} Appellant argues in its assignment of error that the common pleas court erred when it found that the commission's orders were supported by reliable, probative, and substantial evidence. Under R.C.119.12, when a common pleas court reviews an order of an administrative agency, it must consider the entire record and determine whether the agency's order is "supported by reliable, probative, and substantial evidence and is in accordance with the law." R.C. 119.12. "Reliable" evidence is evidence that is dependable and may be confidently trusted.Our Place, Inc. v. Ohio Liquor Control Comm. (1992), 63 Ohio St.3d 570,571. In order to be reliable, there must be a *Page 4 
reasonable probability that the evidence is true. Id. "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. Id. "Substantial" evidence is evidence with some weight; it must have importance and value. Id.
 {¶ 7} The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'" Lies v. Veterinary Med. Bd. (1981),2 Ohio App.3d 204, 207, quoting Andrews v. Bd. of Liquor Control (1955),164 Ohio St. 275, 280. Even though the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, the findings of the agency are not conclusive. Univ. ofCincinnati v. Conrad (1980), 63 Ohio St.2d 108, 111.
 {¶ 8} An appellate court's standard of review in an administrative appeal is more limited than that of a common pleas court. Pons v. OhioState Med. Bd. (1993), 66 Ohio St.3d 619, 621. It is not the function of the appellate court to examine the evidence. Id. The appellate court is to determine only if the trial court has abused its discretion. Id. Abuse of discretion is not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Id. Absent an abuse of discretion on the part of the trial court, an appellate court may not substitute its judgment for that of an administrative agency or a trial court. Id. Nonetheless, an appellate court does have plenary review of purely legal questions in an administrative appeal. Big Bob's, Inc. v. Ohio Liquor ControlComm., 151 Ohio App.3d 498, 2003-Ohio-418, at ¶ 15. Accordingly, *Page 5 
we must also determine whether the common pleas court's decision is in accordance with law.
 {¶ 9} In the present case, the division denied appellant's renewal permits based solely upon three provisions included in R.C. 4303.292(A): subsections R.C. 4303.292(A)(1)(a), (A)(1)(b), and (A)(2)(c). The division also denied appellant's new permits, in part, based upon these same three provisions. As pertinent to the division's denials, R.C.4303.292(A) provides, in part:
 The division of liquor control may refuse to issue, transfer the ownership of, or renew, and shall refuse to transfer the location of, any retail permit issued under this chapter if it finds either of the following:
 (1) That the applicant, or any partner, member, officer, director, or manager of the applicant, or, if the applicant is a corporation or limited liability company, any shareholder owning five per cent or more of the applicant's capital stock in the corporation or any member owning five per cent or more of either the voting interests or membership interests in the limited liability company:
 (a) Has been convicted at any time of a crime that relates to fitness to operate a liquor establishment;
 (b) Has operated liquor permit businesses in a manner that demonstrates a disregard for the laws, regulations, or local ordinances of this state or any other state;
 * * *
 (2) That the place for which the permit is sought:
 * * *
 (c) Is so located with respect to the neighborhood that substantial interference with public decency, sobriety, peace, or good order would result from the issuance, renewal, transfer of location, or transfer of ownership of the permit and operation under it by the applicant[.] *Page 6 
Only one ground listed under R.C. 4303.292(A) needs to be demonstrated in order to refuse a permit. See Our Place, supra, at 572.
 {¶ 10} We will address the violations of R.C. 4303.292(A)(2)(c) and (A)(1)(b) together, as they both generally rely upon the same evidence. Several police officers testified at the hearing before the commission. Alan Brown, a detective with the Columbus Police Department, testified that at least ten of appellant's employees or dancers were charged with or convicted of soliciting, prostitution, unlawful conduct, alcohol violations, and public indecency. There were also disorderly conduct, attempted aggravated assault, trespass, and robbery charges that arose from activities at or near appellant's location. Brown testified that all of the charges against former employees were from 2001 and 2002, with the bulk occurring in 2002.
 {¶ 11} Richard Stevens, a detective with the Columbus Police Department, testified that he witnessed solicitation by the dancers at the permit premises, as well as an employee bringing in a cake with marijuana. Monte Stalnaker, a detective with the Columbus Police Department, also witnessed dancers soliciting customers and exposing themselves. Neither officer was certain when their investigation took place and could only guess it was around 2003.
 {¶ 12} Norman Russell, an officer with the Columbus Police Department, testified he had received four or five complaints about the permit premises, specifically disorderly conduct, liquor violations, loud music, and litter. He stated the premises are located in a mixed residential/commercial area, and a park is located within 500 feet. He called the premises "seedy." However, the only time he was in the premises was in 2002. *Page 7 
 {¶ 13} James Jardine, a sergeant with the Columbus Police Department, and David Howard, a detective with the Columbus Police Department, testified they observed dancers engaging in inappropriate conduct, including solicitation and exposing themselves. Jardine testified that, in all his years as an officer, he had been to a lot of dancer clubs and bars, and the permit premises was by far the dirtiest bar that he had ever been in with the most condensed and inappropriate activity. However, Jardine and Howard witnessed the events in March 2002.
 {¶ 14} Randall Eggleston, who lives across the street from the premises, testified that he had been solicited for oral sex as he drove past the premises. He stated the dancers stand outside on the street during the day. He had never been inside the premises. From his front porch, he has observed patrons receiving oral sex in cars. Small children in the neighborhood can also observe this activity. He testified that it had happened "this summer," which would have been four to five months prior to the hearing. He called the bar a "cancer" to the community. He has witnessed patrons urinate in public, found used condoms in his yard and in the park, and witnessed fights around the premises. He cannot sell his property because of the premises. He opposed renewal of the license. He stated the bad activity has happened every year since the bar opened.
 {¶ 15} David Johnston, who was a patron of the permit premises, testified that he had been visiting the permit premises twice per month for three to four years. He stated that, since Fitzcharles took over as manager of the bar in 2002, there had been a lot of remodeling and upgrades to the premises. He stated there was a dramatic change in the bar since Fitzcharles became manager. He also stated he never observed the bar as being messy or dirty and has never seen illegal activity in the bar. He has also never seen *Page 8 
a lap dance performed at the premises. Samples, the prior bar manager, is not employed at the permit premises anymore. Johnston stated the premises are a "neighborhood bar" where most of the people know each other. He saw no reason why it should not remain open.
 {¶ 16} Bill Harold testified that he had been going to the premises for the past 25 years. He stated he quit going to the bar when it opened under the current permit holder in 2000 because he had a problem with Samples. He stated Samples would let everyone do "anything in the world" and did not care "what it would take to get the money." When the owner fired Samples and Fitzcharles began managing it, he started patronizing the bar again. After Fitzcharles took over, she raised the drinking age to 30 years old with identification required. The premises were also "cleaned up a lot," Harold testified. The bar was repainted and new lights installed. He also witnessed no further illegal activity and was never again propositioned by a dancer. He opined that "[t]he whole atmosphere changed." Harold also stated that Fitzcharles fired the whole employment crew, including replacing every dancer. Twenty rules were posted on the door that workers had to adhere to or they would be fired. He stated responsible people now come to the bar. Harold further testified that the bar should not be punished for what happens on the streets, because that area of town has a lot of problems, such as drugs and prostitution, that are not related to the bar. He stated the problems are not the bar's problems but the problem is with the whole avenue upon which it is located.
 {¶ 17} Maria Fitzcharles testified that she has worked at the premises for seven years. Her charges in 2002 stemmed from being a barmaid for Samples and "not paying attention" to what the dancers were doing. She stated Samples was fired because of *Page 9 
drugs. When Fitzcharles took over as manager, she changed everything in the bar, including firing all the employees, prohibiting drugs, instituting new rules, and firing employees who disobeyed rules. She stated she has a zero-tolerance policy. Fitzcharles also testified that the employee who brought in the marijuana cake had worked there for two weeks and was fired the day of the incident. She stated that there are currently two bartenders working, and sometimes the bar is open with no dancers. They have about two or three dancers currently. She stated she has had no problem with prostitutes at the premises.
 {¶ 18} Mark Fitzcharles is married to Maria Fitzcharles. He sometimes helps her manage the bar, although he is not paid to work there. He stated there are, on average, ten to fourteen people in the bar. It has a "relaxed" atmosphere in which everyone knows each other. He called the premises a safe and relaxed "neighborhood bar." Mark testified that, when people come into the bar dressed like gang members, they tell them to leave. He had never seen a patron solicited for sex or any drugs on the premises. He stated customers had complimented them on how they were managing the premises after Samples left.
 {¶ 19} After reviewing the record, we find the trial court abused its discretion in affirming the orders of the commission on the first three grounds outlined above. Although the testimony of the officers tends to suggest that the premises operated in 2001 and early 2002 in a manner that demonstrated a disregard for the law and may have interfered with public decency, sobriety, peace, and good order of the neighborhood, there is little evidence to suggest that the permit premises operated as such after the prior manager, Samples, was fired in December 2002, and Fitzcharles was hired as manager. *Page 10 
Neither Detectives Stevens nor Stalnaker could testify assuredly when they conducted their investigations of the bar, while the other officers testified that they had only been at the bar while Samples was the manager. Compelling was the testimony of Johnston and Harold. Both agreed that, since Fitzcharles took over as manager of the bar, there had been a dramatic change in the premises. There had been substantial remodeling of and upgrades to the premises, changing "[t]he whole atmosphere." Neither had ever seen any illegal activity since Fitzcharles became manager and had never seen any drugs or solicitation. The record demonstrates that Fitzcharles instituted tighter controls over the premises since becoming manager. She raised the drinking age to 30 years old with identification required, fired all the former employees, and posted rules on the door for the new workers. She does not allow drugs or prostitution in the premises and fires any employee who disobeys the rules.
 {¶ 20} Thus, we conclude the problems identified by the commission's witnesses related to events under the prior manager. This court can consider whether problems at a permit premises have been alleviated under new ownership or management. See, e.g., Meslat v. Ohio LiquorControl Comm., 164 Ohio App.3d 13, 2005-Ohio-5491, at ¶ 21 (city failed to present reliable, probative, and substantial evidence regarding substantial interference with public decency, sobriety, peace, or good order, when the evidence related to problems that occurred at the same location five years ago when the premises was operated under different ownership). The commission failed to present any evidence of charges or convictions for the permit holder or any employees after Fitzcharles became the manager. Under the circumstances outlined in the present case, the change in management has alleviated the problems described in the testimony. *Page 11 
 {¶ 21} The only clear evidence about recent activities was from Eggleston, who lives across the street from the premises and testified that he had been solicited for oral sex as he drove past the place "this summer." However, assuming that the woman who solicited him was an employee, which is difficult to assume given the other testimony about the rampant criminal activity that occurs in the area and on the same street as the permit premises, there is no evidence that such activity was conducted with the knowledge of the permit holder. Further, Eggelston failed to link the area's problems with regard to public sex, urination, and fights specifically with the permit holder. Although some of the offenders in this regard might have patronized the permit holder's premises, there is, again, no evidence that the permit holder condoned or initiated the activities or whether any employees of the permit holder were involved in the activities. Additionally, it is clear that there was no evidence the permit holder or any of the holder's employees were or are aware of these activities occurring outside of its premises and in the general public areas not under its control. Eggelston could not testify as to what activities occurred inside the premises, as he had never been inside the premises. Given Harold's testimony that the whole neighborhood, avenue, and area experiences substantial criminal activity, including prostitution and drug activity, we are reluctant to attach appellant's management of the permit premises to the general ills of the surrounding neighborhood. Much of the evidence, in this regard, was general and speculative, which is insufficient to establish substantial interference with public decency, sobriety, peace, or good order. See, e.g., Ashland v. Gene's Citgo,Inc. (Apr. 20, 2000), Franklin App. No. 99AP-938; Beck v. Ohio LiquorControl Comm. (Nov. 2, 1999), Franklin App. No. 98AP-1464. *Page 12 
 {¶ 22} Based upon the record before us, we cannot find that the commission has provided reliable, probative, and substantial evidence that liquor sales at the permit premises would currently interfere with the neighborhood life. See, e.g., Perry v. Ohio State Liquor ControlComm. (June 8, 2000), Franklin App. No. 99AP-976; Beck, supra. For the same reasons outlined above, we find the commission failed to provide reliable, probative, and substantial evidence that the permit premises now operates in a manner that demonstrates a disregard for the laws, regulations or local ordinances of this state or any other state.
 {¶ 23} The commission also based its decision on R.C.4303.292(A)(1)(a), which provides that the division may refuse to issue or renew a liquor license if the applicant, or any manager of the applicant, has been convicted at any time of a crime that relates to fitness to operate a liquor establishment. The commission points to the conviction of Fitzcharles in 2003 for an October 25, 2002 incident in which Fitzcharles was convicted of a liquor law violation under R.C.4301.22(C), a misdemeanor. Generally, R.C. 4301.22(C) prohibited intoxicating liquor from being sold to any individual who habitually drinks liquor to excess. However, R.C. 4301.22(C) was stricken in July 2004, and is no longer the law in the state of Ohio. Regardless, Fitzcharles explained that the 2002 violation occurred when she was a barmaid for Samples and not since she became the manager at the permit premises. Although R.C. 4303.292(A)(1)(a) provides that the division may consider "any" crime that a manager commits when reviewing a liquor application, the crime must relate to fitness to operate a liquor establishment. We do not believe Fitzcharles' violation under R.C.4301.22(C) related to her fitness to operate a liquor establishment. As outlined above, there was substantial evidence that, since becoming manager at the permit *Page 13 
premises, Fitzcharles has instituted new rules and changed the entire atmosphere of the establishment. There was no evidence demonstrating that Fitzcharles has been charged with a violation of any law since becoming manager, and the record demonstrates that she has vastly improved the conditions at the permit premises. For these reasons, we find the trial court abused its discretion when it found probative, reliable, and substantial evidence to support the commission's determination on this basis. Accordingly, we find the grounds under R.C.4303.292(A)(1)(a), (A)(1)(b), and (A)(2)(c) were insufficient to deny appellant's application for renewal and its application for new permits, and appellant's assignment of error is sustained in this respect.
 {¶ 24} With regard to the denial of appellant's application for new D-2 and D-6 permits, in addition to the first three grounds discussed above, the commission also denied the new permits based upon a fourth, fifth, and sixth ground: (4) the application was prohibited as a matter of the local option election laws from holding a Class D-6 permit that authorizes Sunday sales of alcoholic beverages; (5) the application is prohibiting the division from consideration of the next application for a Class D-2 permit in this taxing district as provided by the priority for the statutory quota; and (6) the application failed to provide an additional permit fee of $282, which is required to process this application for a Class D-2 permit. In its assignment of error, appellant only states that grounds (4), (5), and (6) are procedural in nature and will be cured when the appeal process is exhausted, without providing further explanation. The commission wholly fails to address these grounds.
 {¶ 25} From what can be gleaned from the record and the testimony of Sharon Mull, an attorney with the division, it appears that the fifth and sixth grounds, relating to *Page 14 
the D-2 permit, could be resolved when the appeals process is exhausted. It also appears from Mull's testimony that the local option election laws are not an issue on the D-2 permit. Therefore, payment of the additional fee for the application for the D-2 permit would clear the way for approval, thereby resolving the fifth and sixth grounds. Accordingly, given our earlier findings above with respect to the first, second, and third grounds, we remand the matter with regard to the D-2 permit so as to permit appellant the opportunity to cure the fifth and sixth grounds.
 {¶ 26} However, Mull's testimony does not make clear to this court, and neither party further elucidates the issue, the effect that a reversal would have on the D-6 permit insofar as the prohibition based on the local option election laws is concerned. Mull stated only that the D-6 permit would be:
 [A] matter of local option law. So even if the Commission reversed, the Division still couldn't issue unless local option election showed that the premises were now wet.
 And again, I don't know what the results have been since this order was issued about any local option elections. I don't know what the status of that location is.
 {¶ 27} In denying appellant's D-6 permit, the division provided the following explanation:
 In connection with the processing of the Class D-6 application, the Franklin County Board of Elections notified the Division of the Ward and Precinct history of the proposed permit premises. Currently a part of Ward and Precinct 38A in the City of Columbus, in Franklin County, the Division has determined that the location is dry for the Sunday sale of alcoholic beverages.
Given our lack of current information, and given our determinations above, we remand the matter to the commission to review the current applicability of the fourth ground with *Page 15 
regard to the application for the D-6 permit. Therefore, based on the above reasons, appellant's assignment of error is sustained with regard to the renewal applications and the Class D-2 permit application and remanded for further proceedings with regard to the D-6 permit.
 {¶ 28} Accordingly, appellant's assignment of error is sustained, insofar as the renewal applications and the Class D-2 permit application are concerned, the judgment of the Franklin County Court of Common Pleas is reversed, and the matter is remanded to the commission for further proceedings in accordance with law, consistent with this opinion.
Judgment reversed and cause remanded.
 McGRATH and TYACK, JJ., concur. *Page 1