OPINION
{¶ 1} This is an appeal by appellant, Terry Thomas, from a judgment of the Franklin County Court of Common Pleas, affirming an order by appellee, Ohio State Racing Commission ("commission"), finding appellant in violation of the commission's horse racing rules after appellant's horse tested for a level of total carbon dioxide in excess of the threshold amount of 37 millimoles per liter, as set forth in Ohio Adm. Code 3769-18-01. *Page 2 
 {¶ 2} Appellant is licensed by the commission as a trainer. On March 22, 2006, "Country Welcome," a horse owned and trained by appellant, finished first in a race at Northfield Park. Prior to the race, the commission's veterinarian drew blood from Country Welcome. The commission's laboratory subsequently determined that the horse tested at 38.3 millimoles of total carbon dioxide ("TCO2") per liter of blood serum.
 {¶ 3} Based upon the laboratory report, the judges at Northfield Park issued a ruling finding appellant in violation of the commission's medication rules. Appellant challenged the ruling, and the matter came for hearing before a commission hearing examiner. Following the presentation of evidence, the hearing examiner issued a report and recommendation finding that the commission proved, by a preponderance of the evidence, appellant had violated provisions of Ohio Adm. Code 769-18-01 and 3769-18-02.
 {¶ 4} Following objections filed by appellant, the commission issued an order adopting the findings of fact and conclusions of law of the hearing examiner, and suspending appellant's license for a period of one year, commencing January 3, 2007. The commission also directed appellant to return the purse money won by the horse in the race, and to pay a fine of $1,000.
 {¶ 5} Appellant appealed the commission's decision to the trial court, and the parties submitted briefs to the court. By decision and judgment rendered April 29, 2008, the trial court affirmed the commission's order, finding that such order was supported by reliable, probative, and substantial evidence and was in accordance with law.
 {¶ 6} On appeal, appellant sets forth the following two assignments of error for this court's review: *Page 3 
 Assignment of Error Number One
 The lower court erred and abused its discretion by concluding that the Appellee's Decision was supported by reliable, probative and substantial evidence.
 Assignment of Error Number Two
 The lower court erred in affirming the penalties imposed by the Appellee as the same denied Appellant equal protection of law and were not supported by the evidence.
 {¶ 7} Under the first assignment of error, appellant argues that the trial court abused its discretion by concluding that the commission's order was supported by reliable, probative, and substantial evidence. Appellant contends there was evidence presented at the hearing that any number of factors could affect the TCO2 level of a horse, including the time of day, climate, temperature, diet, and exercise; thus, appellant asserts, the evidence demonstrated that a horse, without the introduction of any artificial substance, may test in excess of 37 millimoles per liter of blood serum.
 {¶ 8} At the outset, we note the applicable standards of review for both the court of common pleas and an appellate court in considering an administrative appeal under R.C. 119.12. In 2216 SA, Inc. v. Ohio LiquorControl Comm., Franklin App. No. 07AP-600, 2007-Ohio-7014, at ¶ 7-8, this court delineated those standards as follows:
 The common pleas court's "review of the administrative record is nether a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'" Lies v. Veterinary Med. Bd. (1981), 2 Ohio App.3d 204, 207, 2 Ohio B. 223, 441 N.E.2d 584, quoting Andrews v. Bd. of Liquor Control (1955), 164 Ohio St. 275, 280, 131 N.E.2d 390. Even though the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, the findings of the agency are not *Page 4 
conclusive. Univ. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108, 111, 407 N.E.2d 1265.
 An appellate court's standard of review in an administrative appeal is more limited than that of a common pleas court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621, 1993 Ohio 122, 614 N.E.2d 748. It is not the function of the appellate court to examine the evidence. Id. The appellate court is to determine only if the trial court has abused its discretion. Id. Abuse of discretion is not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Id. Absent an abuse of discretion on the part of the trial court, an appellate court may not substitute its judgment for that of an administrative agency or a trial court. Id. Nonetheless, an appellate court does have plenary review of purely legal questions in an administrative appeal. Big Bob's, Inc. v. Ohio Liquor Control Comm., 151 Ohio App.3d 498, 2003 Ohio 418, at P15, 784 N.E.2d 753. * * *
 {¶ 9} In the present case, the commission found that appellant was the trainer of the horse and, therefore, the absolute insurer of the condition of the horse under Ohio Adm. Code 3769-18-02; further, that appellant was in violation of Ohio Adm. Code 3769-18-01(B)(4)(d), which provides for a violation "[s]hould a test sample of blood taken from a horse show a concentration of total carbon dioxide in the plasma and/or serum in excess of thirty-seven millimoles per liter."
 {¶ 10} Ohio Adm. Code 3769-18-02 is "commonly known as the absolute insurer rule." Belcher v. Ohio State Racing Comm., Franklin App. No. 02AP-998, 2003-Ohio-2187, at ¶ 14. That rule, which "imposes strict liability on the trainer for the presence of drugs in a horse." Id., at ¶ 16. Ohio Adm. Code 3769-18-02(A) states, in relevant part:
 The trainer shall be the absolute insurer of, and responsible for, the condition of the horse entered in a race, regardless of the acts of third parties. Should the chemical or other analysis of urine or blood specimens prove positive, showing the presence of any foreign substance not permitted by rule 3769-18-01 of the Administrative Code, the trainer of the *Page 5 
horse, * * * and any other person shown to have had the care or attendance of the horse may, in the discretion of the commission, be subjected to penalties provided in paragraph (B) of this rule. * * *
 {¶ 11} The Ohio Supreme Court has observed that horse racing is one of those fields "subject to extraordinarily broad regulatory powers."O'Daniel v. Ohio State Racing Comm. (1974), 37 Ohio St.2d 87, 93. Further, the Supreme Court has rejected constitutional challenges to the absolute insurer rule. Id. (holding that the rule, "which imposes strict accountability upon a trainer for the condition of the horse he enters in a race, is not unconstitutional, void or beyond the scope of authority granted the commission by the General Assembly").
 {¶ 12} In the present case, during the administrative hearing, the commission presented the testimony of Dr. Dale Wright, the state veterinarian at Northfield Racetrack, and Dr. Richard Sams, a professor at the Ohio State University Department of Veterinary Medicine. Dr. Wright testified regarding the standard operating procedure for pre-race collection of blood samples, storage of blood samples, and the shipment of blood samples to the laboratory. Dr. Wright, who was working at Northfield Park on March 22, 2006, testified that he followed all standard operating procedures when collecting blood samples from horses on that date. The hearing examiner determined that Dr. Wright's testimony established a proper chain of custody and proper handling of the sample, and appellant does not challenge the issue of chain of custody on appeal.
 {¶ 13} Dr. Sams, the technical advisor to the Ohio State University Analytical Toxicology Laboratory, testified that a horse's TCO2 levels are often raised when it is administered a "milkshake," consisting of a mixture of high levels of sodium bicarbonate *Page 6 
and other substances. Dr. Sams, noting that a blood sample testing above 37 millimoles per liter constitutes a per se violation of Ohio Adm. Code 769-18-01 (B)(4)(d), stated that an average horse should test at about 31-32 millimoles per liter for TCO2.
 {¶ 14} Dr. Sams testified that the blood sample collected from Country Welcome on March 22, 2006 at Northfield Park contained TCO2 in a prohibited level; specifically, 38.3 millimoles per liter of blood serum. The samples received from the track were tested using two different methods. Dr. Sams stated that both methods are recognized as scientifically valid and reliable for testing blood for TCO2 levels, and that the result of 38.3 millimoles per liter was calculated with a 99 percent confidence level. Dr. Sams further testified that the electrolyte levels in the horse were consistent with sodium bicarbonate being given to the horse.
 {¶ 15} Appellant testified on his own behalf, and denied ever giving Country Welcome a "milkshake," or doing anything to purposely raise the TCO2 level of the horse. Appellant testified that the horse has been on the drug Lasix for at least three years, and had been given 10cc's of Lasix at least four hours before racing.
 {¶ 16} In the present case, appellant had the opportunity to present evidence before the commission which, he asserted, showed that the level of TCO2 for the horse at issue was elevated by factors other than the artificial administration of sodium bicarbonate. The commission heard and rejected this evidence. Upon review of the record, we find there was substantial evidence upon which the commission could have found appellant in violation of both Ohio Adm. Code 3679-18-01 and 3679-18-02 for entering a horse in a race whose blood level tested above the authorized limit for TCO2. *Page 7 
 {¶ 17} In asserting that the trial court abused its discretion in finding the commission's order was supported by reliable, probative, and substantial evidence, appellant argues that various studies, including the Smithurst study, demonstrate that diet, as well as other factors, can result in changes to a horse's TCO2 levels. The validity of that study, though, was challenged during the hearing. During cross-examination, Dr. Sams testified that he did not agree with the findings of the study, stating "there are problems associated with the measurement of TCO2 that he has reported." (Tr. 101.) According to Dr. Sams, the Smithurst study had not been published in a peer-reviewed journal, and he found it "highly suspect." (Tr. 101.)
 {¶ 18} Appellant also cites to testimony that the horse in question had been administered Lasix, a drug that can cause an increase in TCO2 levels. However, the hearing examiner heard evidence rebutting appellant's claim that the administration of this drug was responsible for elevating the horse's TCO2 level above the threshold limits. Specifically, while Dr. Sams acknowledged that a horse administered Lasix could test higher for carbon dioxide, he testified that the current per se level of 37 millimoles per liter of TCO2 takes such factors into account.
 {¶ 19} Appellant argues that a trainer or owner of a horse has no independent means to test a horse prior to the start of a race for excess levels of TCO2. Both the commission and the trial court found this argument unpersuasive. At the hearing, Dr. Sams noted that the commission has a rule permitting an owner/trainer to quarantine the horse for five days for purposes of testing to determine whether the horse normally has an unusually high level of TCO2; if it is determined that the horse's normal psychological *Page 8 
condition results in high TCO2 levels, the owner/trainer would not be subject to discipline.[1]
 {¶ 20} The trial court noted that appellant could have exercised his prerogative to have Country Welcome quarantined and tested to determine whether this particular horse had a normally high level, but appellant chose not to avail himself of the rule. We find no abuse of discretion by the trial court in rejecting appellant's argument.
 {¶ 21} Appellant's contention that there is no evidence that an increased TCO2 level enhances a horse's performance is unpersuasive. We note that appellant did not present any evidence during the administrative hearing regarding whether or not increased TCO2 levels affect a horse's performance.[2] Further, whether the first place finish by Country Welcome in the instant case was enhanced by the level of TCO2 is not dispositive of whether appellant violated the commission's rules.
 {¶ 22} Also unpersuasive is appellant's contention that the commission presented no evidence appellant personally did any act to increase the TCO2 levels in the horse. Under Ohio law, "[t]he absolute insurer rule imposes strict liability on the trainer for the presence of drugs in a horse," and, therefore, "[t]he only evidence necessary to support a violation of this rule is a positive test for a prohibited substance."Belcher, supra, at ¶ 16. *Page 9 
 {¶ 23} Based upon the foregoing, appellant has failed to show that the trial court abused its discretion in finding that the commission's order was supported by reliable, probative, and substantial evidence and was in accordance with law. Accordingly, appellant's first assignment of error is overruled.
 {¶ 24} Under the second assignment of error, appellant asserts the trial court erred in affirming the commission's imposition of a maximum penalty, and that the actions of the commission constituted a violation of equal protection. Appellant cites the fact that, within months of the alleged violation, the commission drastically modified its method of testing from post-race testing to pre-race testing. Appellant maintains that the commission's decision supports a less severe sanction.
 {¶ 25} In general, "[w]hen a complaining party alleges that a law that is fair on its face was applied unequally to those who are similarly situated, that party must establish intentional and purposeful discrimination in order to prove a denial of equal protection."Linden Med. Pharmacy, Inc. v. Ohio State Bd. of Pharmacy, Franklin App. No. 02AP-1233, 2003-Ohio-6650, at ¶ 16, citing Cahill v. Lewisburg
(1992), 79 Ohio App.3d 109, 116.
 {¶ 26} In the instant case, the fact that the rule in effect at the time of the alleged violation was later modified does not amount to a denial of equal protection to appellant. In its decision, the trial court noted that the reason the commission commenced pre-race testing for TCO2 in late 2006, approximately six months after appellant's race, was because it was not technologically or economically feasible to do so until that later date. Further, the commission noted that appellant was treated the same as all other trainers similarly situated on March 22, 2006, i.e., they were all subject to post-race testing. Here, *Page 10 
there was no showing of intentional and purposeful discrimination or that the commission acted arbitrarily.
 {¶ 27} Appellant also challenges the imposition of the penalties imposed as too severe. However, such penalty was "within the range of sanctions permitted, and this court does not have the authority to modify that decision if the Commission's decision is supported by reliable, probative and substantial evidence and is supported by law."Roberson v. Ohio State Racing Comm., Franklin App. No. 03AP-480,2004-Ohio-127, at ¶ 20. Appellant's second assignment of error is without merit and is overruled.
 {¶ 28} Based upon the foregoing, appellant's first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
McGRATH, P.J., and SADLER, J., concur.
[1] That rule, set forth under Ohio Adm. Code 3769-18-01(B)(19)(a), provides in part that, if a test sample of blood shows a concentration of TCO2 in excess of the authorized level, "the owner or trainer of that horse contending that such level is physiologically normal for that specific horse may request the horse be held in approved quarantine at a location designated by the commission."
[2] But, see, Angelle v. Louisiana State Racing Comm. (La.App. 2002),828 So.2d 1153, 1154, fn.1 (raising the level of blood total carbon dioxide "can have the effect of expediting the removal of lactic acid from the horse's muscles, thereby improving its endurance for long races"); Summer v. Hogan (N.Y. 2008), 240 N.Y.L.J. 15 (noting that purpose of administering baking soda to horse before race to neutralize "lactic acid build-up, slowing the onset of fatigue, and presumably enhancing the horse's performance"). *Page 1